## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

FARHAN SHEIKH,

Defendant.

Case No. 19 CR 655

Judge Mary M. Rowland

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Farhan Sheikh moves for a new trial pursuant to Federal Rule of Criminal Procedure 33 and previously moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and to dismiss the second superseding indictment. For the reasons stated below, these motions are denied.

## BACKGROUND

On August 17, 2019, Sheikh was charged in a criminal complaint with knowingly transmitting in interstate commerce a communication containing a threat to injure the person of another in violation of 18 U.S.C. § 875(c). [1]. On November 5, 2020, a grand jury returned an indictment against Sheikh charging him with the same violation. [78]. On October 4, 2023, a grand jury returned a second superseding indictment that charged the same offense and included the recklessness standard set forth in *Counterman v. Colorado*, 600 U.S. 66, 78–79 (2023). [145] at 2.

1

At trial, the government first called Alex Wilmot to the stand who testified that on August 13, 2019, he observed a series of posts on iFunny, a social media platform, by an account named "Awarded" including a post that read:

> I am done with my state and thier [sic] bullshit abortion laws and allowing innocrnt [sic] kids to be slaughtered for the so called "womans right" bullshit. Ive [sic] seen nothing but whores go out of the way to get an abortion, but no more. I will not tolerate this anymore. Im DONE. On August 23rd 2019, I will go to the [Victim A health clinic] in Chicago on peterson. I will proceed to slaughter and murder any doctor, patient, or visitor i see in the area and I will not back down. consider this a warning for anyone visiting…

[166], Tr. Vol. 2 at 336:3–340:15; Gov't. Exh. 1-1.[1] Wilmot explained that he did not believe the above post or three additional related posts to be a joke because, among other things, they indicated a threat at a specific location on a specific day. Tr. Vol. 2. at 336:3–337:24, 340:5-45, Gov't. Exhs. 1-1 – 1-4, 4-1 – 4-4. One of the posts stated: "To all the fbi agents in this app, I am NOT a satirical account. I post what I mean, and i WILL carry out what I post." Tr. Vol. 2. at 341:15–342:16; Gov't. Exh. 1-2. After viewing the posts, Wilmot testified that he contacted the FBI to report the posts. Tr. Vol. 2. at 336:3–8, 345:2–15. Next, the government called FBI Special Agent James Rife who testified that he took steps to identify the user of the "Awarded" account and mitigate the threat from the postings, including: (1) issuing an emergency disclosure request and subpoena to iFunny seeking subscriber information for the "Awarded" iFunny account; (2) notifying the Chicago Police Department of the online postings from the "Awarded" iFunny account; (3) speaking with Wilmot and reviewing his

---

[1] The parties stipulated that in August of 2019, and at all relevant times, Sheikh was the sole user of the iFunny account "Awarded." Tr. Vol. 2 at 341:2–8.

online threat report submission; and (4) notifying the Victim A health clinic of the threat posting. Tr. Vol. 2 at 387:11–21, 400:3–406:24, 408:14–25, Gov't. Exhs. 4-1 – 4-4.

Agent Rife and Deputy U.S. Marshal Michael Woods-Hawkins both testified that they, along with other law enforcement officers, traveled to the Victim A health clinic on August 15, 2019. Tr. Vol. 2 at 408:14–409:4; [167], Tr. Vol. 3 at 616:5–16. Agent Rife spoke in-person with Victim A health clinic employee Melissa Kamm and patched in her supervisor, Larisa Rozansky, via speakerphone and notified them of the threat in the post by the "Awarded" account. Tr. Vol. 2 at 412:2–413:23; Tr. Vol. 3 at 617:5–19, 634:16–637:20, 646:9–647:12. Agent Rife testified that he did not read the actual online posting to either Kamm or Rozansky, but stated to them "that a threat on a social media platform called iFunny had been made specifically against [Victim A health clinic] because they provide abortion services and that the date of the threat was August 23rd, 2019, and that [it] was for a mass act of violence" directed at "their doctors, patients, and visitors." Tr. Vol. 2 at 413:4–23. Kamm testified that she was "frightened," "apprehensive about coming back to work," and decided to take "a couple days off" from work. Tr. Vol. 3 at 638:9–21. Rozansky described her reaction to the threat as "shocked" and "scared." *Id.* at 647:17–20.

Deputy Woods-Hawkins and Agent Rife also testified that while at the Victim A health clinic, Deputy Woods-Hawkins conducted a security assessment of the office space and related his findings to Rozansky. Tr. Vol. 2 at 414:5–415:5, Tr. Vol. 3 at 617:20–618:19. Rozansky and Kamm testified that after meeting with law

3

enforcement, a meeting occurred among the Victim A health clinic staff, and that Rozansky implemented proactive security measures, including the installation of an electric lock, a remoted controlled front office door, a security camera system, and a panic button. Tr. Vol. 3 at 638:25–639:9, 648:2–652:16, Gov't. Exhs. 6-1 – 6-8, 6-10 – 6-11, 6-13.

Agent Rife testified that he and his investigative team identified other social media accounts associated with the username "Awarded," obtained phone numbers and email address associated with those accounts and confirmed Sheikh's name and address through a law enforcement database and information provided by Comcast and iFunny. Tr. Vol. 2 at 419:1–423:20, 428:12–430:12, 434:4–22, 457:11–459:20, 482:6–484:24; Gov't. Exhs. 100, 100-9, 101, 300–301, 303. Agent Rife testified that a search warrant was executed at Sheikh's residence, and he interviewed Sheikh during the evening of August 16, 2019. Tr. Vol. 2 at 437:6–440:22, 485:4–489:17; Gov't. Exh. 3. During his statement to Agent Rife and his partner, Special Agent Maureen Mazola, Sheikh admitted the following: "Awarded" was his iFunny account; he wrote the post that the FBI was there to talk with him about; his post was about an abortion clinic; his post referenced a specific date; he used his cell phone, and only his cell phone, to access his iFunny account. Gov't. Exh. 3. During his interview, Sheikh identified his phone to Agent Rife, which was recovered by the FBI and processed as evidence. Tr. Vol. 2 at 441:4–443:8. Within Sheikh's phone, law enforcement extracted images and iFunny chat conversations from Sheikh's "Awarded" account, as well as an internet screen capture of the Victim A health clinic.

4

*Id.* 445:1–457:2; Gov't. Exhs. 2-4, 2-6, 2-8 – 2-18, 2-23. During his testimony, Agent Rife also identified additional iFunny chat conversations between Sheikh and other iFunny users that reference and discuss Sheikh's posting. Tr. Vol. 2 at 459:21–476:22, 479:9–481:24, Gov't. Exhs. 100-2 – 100-6, 100-8, 100-8A – 100-8E.

Before trial, Sheikh moved to dismiss the indictment because, among other things, Section 875(c) is unconstitutional on its face and as it applies to his conduct. [152] at 3–4. The Court assumes familiarity with its decision denying Sheikh's facial challenge and reserving ruling on his as-applied challenge. [157]. After the government rested, Sheikh's counsel moved for judgment of acquittal under Federal Rule of Criminal Procedure 29 and the Court denied that motion. Tr. Vol. 3 at 661:13–19. After the defense rested, Sheikh's counsel renewed the motion for judgment of acquittal and the Court reserved ruling. [161]. On November 8, 2023, a jury convicted Sheikh of knowingly transmitting in interstate commerce a communication containing a threat to injure the person of another in violation of 18 U.S.C. § 875(c). After trial, Sheikh's counsel filed a timely motion for a new trial under Federal Rule of Criminal Procedure 33. [171].

## DISCUSSION

### I. Motion for Judgment of Acquittal

Sheikh argues that (1) Wilmot testified that iFunny is a social media website where people say outrageous and untrue things and are motivated to get "likes" by other users; (2) Sheikh repeatedly emphasized in his interview with law enforcement

that the post was a joke; and (3) Section 875(c) is unconstitutional as it applies to his conduct. Tr. Vol. 3 at 654:24–657:3.

A defendant may move for a judgment of acquittal on the basis that the evidence presented at trial was "insufficient to sustain a conviction." Fed. R. Crim. P. 29. A defendant faces "a nearly insurmountable hurdle" in contending that the jury had insufficient evidence to find them guilty. *See United States v. Miller*, 782 F.3d 793, 797 (7th Cir. 2015). The court must "afford great deference to jury verdicts, view the evidence in the light most favorable to the jury's verdict, and draw all reasonable inferences in the government's favor." *United States v. Brown*, 973 F.3d 667, 682 (7th Cir. 2020). The jury's verdict may be set aside "only if no rational trier of fact could have agreed with the jury." *Id.*

Sheikh's arguments essentially boil down to whether the post was a "true threat." The government must show that Sheikh's post was "one that a reasonable observer, considering the context and circumstances of the statement, including surrounding communications, would interpret as a true threat." [162] at 16. The government must also show that, at a minimum, Sheikh was "conscious of a substantial risk that others would regard his communication as a threat, and recklessly disregard[ed] that risk." *Id.* at 14. Whether a statement is a "true threat" is "ultimately a question … for the jury." *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008).

The evidence submitted to the jury that Sheikh's post constituted a true threat was abundant. First, there is Sheikh's post, which after stating a specific target and

6

date, states, "I will proceed to slaughter and murder any doctor, patient, or visitor i see in the area and I will not back down." Gov't. Exh. 1-1. Sheikh reiterated his seriousness in a subsequent post: "To all the fbi agents in this app, I am NOT a satirical account. I post what I mean, and i WILL carry out what I post." Gov't. Exh. 1-2. Sheikh also had conversations with another iFunny user where they discussed, among other things, getting inside of Victim A health clinic. Gov't. Exhs. 2-8 – 2-11. Second, there is the testimony from Wilmot, who believed the post was a serious threat—not a joke—and acted upon it by reporting it to the FBI. Tr. Vol. 2. at 336:3–8, 340:5–14 ("There's no picture of a character from a television show or anything who is known for saying violent things in a funny way. There's no joke at all in this text. There's only very serious words."). Third, the employees of the Victim A health clinic testified about their reactions to the threat: Kamm was "frightened" and "apprehensive about coming back to work" and Rozansky was "shocked" and "scared." Tr. Vol. 3 at 638:9–14, 647:17–20. Further, Rozansky, after a meeting with employees, implemented a series of security measures, including an electric lock, a remoted controlled office door, and a panic button. *Id*. at 648:2–24**.**

This Court may only overturn the verdict if "no rational trier of fact could have agreed with the jury." *Brown*, 973 F.3d at 682. It cannot do so. For these reasons, Sheikh's motion for judgment of acquittal is denied as well as his as applied challenge.

## II. Motion for a New Trial

Sheikh moves for new trial pursuant to Federal Rule of Criminal Procedure 33. [171]. Rule 33 allows district courts to vacate judgment and grant a new trial in

the "interest of justice." Fed. R. Crim. P. 33. However, "[a] jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States. v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994). The Seventh Circuit has made clear that there must be a "reasonable possibility that the trial error had a prejudicial effect on the jury's verdict" to warrant a new trial. *United States v. Flournoy*, 842 F.3d 524, 530 (7th Cir. 2016). Therefore, granting relief under Rule 33 is "reserved for only the most extreme cases." *United States v. Coscia*, 4 F.4th 454, 465 (7th Cir. 2021).

First, Sheikh argues that the Court improperly allowed into evidence the testimony of Kamm and Rozansky, the Victim A health clinic employees, as well as associated exhibit photos from the clinic. [171] at 2. At trial, their testimony included the general description of the services offered by Victim A health clinic, its location, their reaction to receiving information about the threat, and steps taken to increase security in response to the threat. Here, the reactions of Kamm and Rozansky and precautions taken were relevant to the assessment of whether Sheikh's statement was a true threat. *See, e.g., United States v. Parr*, 545 F.3d 491, 501 (7th Cir. 2008) ("Although our circuit treats as relevant evidence both the victim's response to a statement and the victim's belief that it was a threat, we have never limited the inquiry to either the speaker's perspective or the targeted victim's perspective.") (cleaned up); *United States v. Hoffman*, 806 F.2d 703, 712 (7th Cir. 1986) (evidence that the Secret Service and the staff of the White House mailroom took defendant's letter to the President seriously was relevant even though they weren't targets of the

8

threat); *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (affirming conviction and finding "[t]hat the judge was sufficiently alarmed to request and receive protection from the local sheriff was corroborative evidence of the meaning of the letter" and whether it was a threat). Overall, this evidence was relevant, and its probative value was not outweighed by any prejudicial effect. *See Parr*, 545 F.3d at 501–02; *Hoffman*, 806 F.2d at 708–10.

Second, Sheikh argues the Court improperly precluded defense counsel from defining reasonable doubt to the jury and barred defense counsel from questioning the venire about their understanding of reasonable doubt. [171] at 3. The Seventh Circuit has instructed that it is inappropriate to define "reasonable doubt" for a jury, reasoning that:

> Attempts to explain the term "reasonable doubt" do not usually result in making it any clearer to the minds of the jury. And that is precisely why this circuit's criminal jury instructions forbid them. "Reasonable doubt" must speak for itself. Jurors know what is "reasonable" and are quite familiar with the meaning of "doubt." Judges' and lawyers' attempts to inject other amorphous catch-phrases into the "reasonable doubt" standard … only muddy the water. … It is, therefore, inappropriate for judges to give an instruction defining reasonable doubt, and it is equally inappropriate for trial counsel to provide their own definition. Trial counsel may argue that the government has the burden of proving the defendant's guilt beyond a reasonable doubt, but they may not attempt to define reasonable doubt.

*United States v. Glass*, 846 F.2d 386, 387 (7th Cir. 1988) (cleaned up). Put differently, any attempt to define the term "presents a risk without any real benefit" because any definition of the term often leans toward "misleading refinements" that "weaken and make imprecise the existing phrase." *United States v. Reynolds*, 64 F.3d 292, 298 (7th Cir. 1995) (cleaned up). Thus, this basis for a new trial is denied because neither

9

courts nor attorneys may attempt to define the term "reasonable doubt" for a jury. *See United States v. Alex Janows & Co.*, 2 F.3d 716, 723 (7th Cir. 1993) ("It seems simple enough; we admonish counsel, do not define 'reasonable doubt' to a jury.").

Lastly, Sheikh argues that the Court improperly allowed the government to introduce evidence that he received a "strike" from the operators of the iFunny platform based upon his online posting. [171] at 4. At trial, the government introduced Exhibit 4-1, which was a post Sheikh made to his own iFunny account that Wilmot saw and submitted to the FBI. Tr. Vol. 2 at 337:12–338:8, 405:19–406:3; Gov't. Exh. 4-1. Exhibit 4-1 displayed Sheikh's iFunny post at issue, along with the following text above the posting: "you've received a strike" (in red text) and "Your upload was removed for violating Threats of Harm, and has triggered a strike against your account" (in grey text). Gov't. Exh. 4-1. The image included Sheikh's words, superimposed on the image, "I got a strike LMFAOO".[2] *Id.* The government also introduced Exhibit 2-17, which was an iFunny screen capture that was located on the data extracted from Sheikh's phone. Tr. Vol. 2 at 445;1–446:7, 455:20–24; Gov't. Exh. 2-17. Exhibit 2-17 was identical to Exhibit 4-1, except instead of the words, "I got a strike LMFAOO," it displayed the words, "Your account has 1 active strike. At 3 strikes, this account will be suspended for 7 days" (in grey text). Gov't. Exh. 2-17. In order for Sheikh to be found guilty, he must have "transmitted the communication for the purpose of making a threat, or knowing the communication would be viewed

---

[2] Wilmot and Sheikh testified that "LMFAO" is an acronym for "laughing my fucking ass off." Tr. Vol. 2 at 349:4–8; Tr. Vol. 3 at 707:20–23; *see also Merriam-Webster*, http://www.merriam-webster.com/dicitonary/lmao (same).

as a threat, or … transmitted the communication recklessly disregarding a substantial risk that others would regard the communication as a threat." [162] at 14; *see also Counterman*, 600 U.S. at 78–79. Thus, Sheikh's conduct of saving the "strike" to his phone (Gov't Exh. 2-17), editing the "strike" (Tr. Vol. 3 at 781:2–782:16), and then reposting the "strike" (Gov't Exh. 4-1) was relevant and pertinent to establishing his *mens rea.* Overall, the probative value of these exhibits outweighed any prejudicial effect.

## CONCLUSION

For the stated reasons, the Court denies Sheikh's motions to dismiss [152], for a judgment of acquittal, and new trial [171].

E N T E R :

Dated: July 29, 2024

_____
MARY M. ROWLAND
United States District Judge

11