UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | No. 19 CR 655 |
| v. | |
| FARHAN SHEIKH | Judge Mary M. Rowland |

## GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, respectfully submits its sentencing memorandum and asks the Court to sentence defendant Farhan Sheikh to a term of imprisonment at the low-end of the advisory Guidelines range of 27 to 33 months imprisonment. As detailed below, such a sentence would be sufficient, but not greater than necessary, to satisfy the principles set forth in the Sentencing Guidelines and 18 U.S.C. § 3553(a). In addition, the government requests that this Court impose a two-year term of supervised release that includes the conditions specified on pages 20-25 of the presentence investigation report ("PSR").

## I.     Offense Conduct

### A.     Summary

As described in the PSR and the government's version of the offense, on August 13, 2019, defendant, using the moniker "awarded" on the social media site iFunny, publicly posted a threat to kill individuals at the Women's Aid Center, a health clinic located at the intersection of Peterson and Cicero, in Chicago. Defendant

subsequently posted four additional threatening posts—targeting the same victim — –to his "awarded" iFunny account.

On August 13, 2019, the FBI received a tip via the National Threat Operations Center ("NTOC") that an iFunny user with the username "awarded" had posted a threat to the online forum iFunny. Agents and analysts viewed the publicly available page of "awarded" and found the posting contained in the original tip to the NTOC as well as the additional threatening posts. The original charged threat appears below along with the four additional threat postings in chronological order as they were posted and appeared on the "awarded" iFunny account:

### Threat Posting 1 (the Conduct of Conviction)



**Threat Posting 2**



**Threat Posting 3**



**Threat Posting 4**



**Threat Posting 5**



On August 13, 2019, Florida resident Alex Wilmot observed postings 1-4 detailed above on the iFunny account "awarded." Mr. Wilmot did not believe the posts were a joke, and after he observed the postings, he contacted the FBI to report the posts.

FBI Special Agent James Rife began investigating the threat postings on the morning of August 14, 2019. As part of his investigation, Agent Rife went to the iFunny website and accessed and viewed defendant's publicly available postings on the "awarded" account, including the threatening posts described above. Agent Rife also took numerous steps to identify the user of the "awarded" account and mitigate the threat from the postings. Specifically, Agent Rife: (1) issued an emergency disclosure request and subpoena to iFunny seeking subscriber information for the "awarded" iFunny account; (2) notified the Chicago Police Department of the online postings from the "Awarded" iFunny account; (3) spoke with Alex Wilmot and reviewed Mr. Wilmot's online threat report submission; and (4) notified the Women's Aid Center of the threat posting.

During the late morning of August 15, 2019, Agent Rife and Deputy U.S. Marshals Michael Woods-Hawkins, along with and Deputy U.S. Marshal Jerome Sliz and Chicago Police Sergeant Thomas Olsen, traveled to the Women's Aid Center. While at the clinic, Agent Rife spoke in-person with clinic employee Melissa Kamm and patched in the clinic director, Larisa Rozansky, via speakerphone and notified them of the threat posted to defendant's "awarded" account. While he did not read the actual online posting to either Ms. Kamm or Ms. Rozansky, Agent Rife did relate

to both women, "that a threat on a social media platform called iFunny had been made specifically against Women's Aid Center because they provide abortion services and that the date of the threat was August 23, 2019, and that was for a mass act of violence," and that it was "related…against their doctors, patients, and visitors." Trial Transcript ("Tr") 412-13. According to Agent Rife, Ms. Kamm appeared "visibly unsettled, uncomfortable, [and] startled," while Ms. Kamm described herself as "frightened…apprehensive about coming back to work…uneasy" and that she "took a couple days off" from work after the incident. *Id*. at 413-14, 638. Furthermore, Ms. Rozansky described her reaction to the threat as "shocked" and "scared." *Id*. at 647.

In addition, while at the Women's Aid Center, Deputy Woods-Hawkins conducted a security assessment of the office space and related his findings to Ms. Rozansky. After their meeting with law enforcement, a meeting occurred among the staff of the Women's Aid Center and Ms. Rozansky implemented proactive security measures, including the installation of an electric lock, a remote-controlled front office door, a security camera system, and a panic button. Photos of these proactive security measures appear below:

## Camera/Closet with Security System



## Security Camera



## Camera Facing Reception Window



## Nest Security System Monitor



## Door Lock



## Nest Security Doorbell



**<u>Exterior Front Door</u>**



**<u>Panic Button</u>**



**<u>Door Entrance Button</u>**



**<u>Door Entrance Button (pan out)</u>**



**<u>ADT System</u>**



**<u>Nest Security Camera Monitor</u>**



Agent Rife and his investigative team were able to identify several other social media accounts associated with the username "awarded," including two Twitter accounts that provided phone numbers and an email address that revealed defendant's name and address on the 1800 block of West Thome Ave., in Chicago. The information provided by Twitter was later corroborated by account information provided by iFunny and Comcast and included internet protocol ("IP") logs that were associated with defendant's residence on West Thome Ave.

After learning defendant's address, Agent Rife and his investigative team executed a search warrant at defendant's residence and interviewed defendant during the evening of August 16, 2019. During his statement to Agent Rife and his partner, Special Agent Maureen Mazola, defendant admitted the following: "awarded" was his iFunny screen name and the name of his iFunny account; he wrote the post that the FBI was there to talk with him about; his post was about an abortion clinic; his post referenced a specific date; he used his cell phone, and only his cell phone to access his iFunny account. During his interview, defendant identified his phone to Agent Rife, which was recovered by the FBI and processed as evidence. Within the phone, law enforcement extracted and identified several pertinent images, including images and iFunny chat conversations from defendant's "awarded" account, as well as an internet screen capture of the Women's Aid Center. These images appear below:

# Women's Aid Center

4.4 ★★★★☆ (54)

Abortion clinic in Chicago, Illinois

Open











August 23 2019

Womans aid center on Peterson

if you know, you know...

Its honestly baffling to me how fucked over the system is. We PRIDE the so called "federal agents" by saying "they are doing thier job" "theyre helping lower crime" "theyre keeping us safe" but is that really so? These buffons arrest us because we practice our freedoms of rights? They arrest us and twist thier tales to push thier agenda? They twist the truth like some sick fucking story, and we all eat it up like garbage? This fucking world and society is going down fucking hill. We applaud crooked cops illegally arresting us? We applaud the innocent babies being takem away from this world with abottion because its "a right?" If killing babies is a right and practicing your freedom of speech isnt, then what kinda society is this? I do not care anymore, may god forgive me for what I am going to do soon...

Everyone deleting their posts and shit lmfao. Imagine being scared over some feds 😄

 comics ← 🗑 ▢ next

I am done with my state and thier bullshit abortion laws and allowing innocrnt kids to be slaughtered for the so called "womans right" bullshit. Ive seen nothing but whores go out of the way to get an abortion, but no more. I will not tolerate this anymore. Im DONE. On August 23rd 2019, I will go to the WOMANS AID CENTER in Chicago on peterson. I will proceed to slaughter and murder any doctor, patient, or visitor i see in the area and I will not back down. consider this a warning for anyone visiting...



**you've received a strike**

Your upload was removed for violating Threats of Harm, and has triggered a strike against your account.

I am done with my state and thier bullshit abortion laws and allowing innocrnt kids to be slaughtered for the so called "womans right" bullshit. Ive seen nothing but whores go out of the way to get an abortion, but no more. I will not tolerate this anymore. Im DONE. On August 23rd 2019, I will go to the WOMANS AID CENTER in Chicago on peterson. I will proceed to slaughter and murder any doctor, patient, or visitor i see in the area and I will not back down. consider this a warning for anyone visiting...

iFunny.co

Your account has 1 active strike. At 3 strikes, this account will be suspended for 7 days.

Agent Rife also identified additional iFunny chat conversations (obtained from iFunny) between defendant and other iFunny users from the time in and around defendant's threat posting, and which reference and discuss defendant's threat posting. Some of these chats appear below:[1]

### awarded iFunny chat with "Ser███"

| | | |
|---|---|---|
| 2019-08-15 01:34:07+0000 | awarded | Welp |
| 2019-08-15 01:34:10+0000 | awarded | Going to jail |
| 2019-08-15 01:34:11+0000 | awarded | Cya |
| 2019-08-15 01:34:22+0000 | Ser█ | Bye |
| 2019-08-15 01:34:28+0000 | Ser█ | Good luck my dude |
| 2019-08-15 01:46:20+0000 | awarded | Ty |

### awarded iFunny chat with "chx██"

| | | |
|---|---|---|
| 2019-08-13 23:11:26+0000 | chx█ | https://sendbird-us-1.s3.amazonaws.com/AFB3A55B-8275-4C1E-AEA8-309842798187/upload/n/a30d1a7d050445f6a1dbdc8d0ad7d4e1.jpg |
| 2019-08-13 23:11:37+0000 | chx█ | This ironic or deadass |
| 2019-08-14 02:53:41+0000 | awarded | We'll see on August 23rd |
| 2019-08-14 02:55:31+0000 | chx█ | Bro |
| 2019-08-14 02:55:58+0000 | chx█ | I'm no Fed just saying bombing is more effective |
| 2019-08-14 02:56:41+0000 | awarded | Will consider it, thanks [sic] |

### awarded iFunny chat with multiple users

| | | |
|---|---|---|
| 2019-08-13 18:34:19+0000 | Awarded | Guys |
| 2019-08-13 18:34:24+0000 | awarded | I might be going to jail |
| | Gor█ | What did you do |

---

[1] All times listed in the chats are in Coordinated Universal Time ("UTC"), which is five hours ahead of Central Daylight Time ("CDT").

| | | |
|---|---|---|
| 2019-08-13 18:36:37+0000 | | |
| 2019-08-13 18:38:34+0000 | Ve█ | Murdering another infant |
| 2019-08-13 18:39:25+0000 | awarded | Look at recent |
| 2019-08-13 18:40:01+0000 | ma█ | I hope puyol dies today |
| 2019-08-13 18:41:42+0000 | Go█ | Awarded gonna die August |
| 2019-08-13 18:44:34+0000 | awarded | ðŸ˜, |
| 2019-08-13 19:01:32+0000 | Go█ | Awarded fucking dies |
| 2019-08-13 19:08:34+0000 | Arb█ | Wtf lmao |
| 2019-08-13 19:08:40+0000 | Arb█ | Awarded you fucked up lol |
| 2019-08-13 19:19:27+0000 | Awarded | Lwl |
| 2019-08-13 19:23:46+0000 | Ant█ | Yo you gotta chill awarded sauce lmfao |
| 2019-08-13 19:25:47+0000 | awarded | I will not back down |
| 2019-08-13 19:26:27+0000 | Puy█ | Why doe |
| 2019-08-13 19:31:11+0000 | awarded | I will not back down |
| 2019-08-13 20:03:28+0000 | Puy█ | Why doe |
| 2019-08-13 20:03:29+0000 | E█ | Awarded letting clout go to his head.. u love to see it |
| 2019-08-13 20:07:45+0000 | ney█ | I'm baby |

14

| | | |
|---|---|---|
| 2019-08-13<br>21:23:35+0000 | awarded | :) |
| 2019-08-13<br>22:03:40+0000 | Re ▮▮▮▮ | Bruh wtf awarded u gonna get the fbi on you |
| 2019-08-13<br>22:13:01+0000 | awarded | :D |

### awarded iFunny chat with "Lo▮▮▮"

| | | |
|---|---|---|
| 2019-08-14<br>07:13:55+0000 | Lo▮ | Bro, you gonna die, the feds will come after you ðŸ˜ |
| 2019-08-14<br>07:37:50+0000 | awarded | I do what I want |
| 2019-08-14<br>08:03:35+0000 | Lo▮ | Okay, so do we know who all the feds are, or just look out for high sub, no content, high activity and no pfp accounts? |
| 2019-08-14<br>08:28:21+0000 | awarded | I mean it's the generic names with no pfps and high subs with no days on |
| 2019-08-14<br>15:27:25+0000 | Lo▮ | I thought we were looking for high day counts |
| 2019-08-14<br>15:29:48+0000 | awarded | No, high day accounts are normal accounts |
| 2019-08-14<br>18:22:33+0000 | Lo▮ | Idk, Iâ€™ve come across high day accounts with high subscriptions, but no content whatsoever |
| 2019-08-14<br>18:25:24+0000 | awarded | Could be tbh |
| 2019-08-14<br>18:26:51+0000 | Lo▮ | Sagfish and kjax101 might be, and they are subbed to me, God help me ðŸ˜ |
| 2019-08-14<br>18:37:23+0000 | awarded | Lmfaoo |
| 2019-08-14<br>18:37:30+0000 | awarded | I have alot of feds subbed to me too ngl |
| 2019-08-14<br>18:37:32+0000 | awarded<br>awarded | ðŸ˜<br>Both of them are subbed to porn and anime, so I dont think so |

15

| | | |
|---|---|---|
| 2019-08-14 18:38:44+0000 | | |
| 2019-08-14 18:51:17+0000 | Lo█ | So, are your posts bait, or you actually gonna do it? |
| 2019-08-15 03:35:40+0000 | awarded | Wym |
| 2019-08-15 04:38:35+0000 | Lo█ | Saying you're going to attack people? |
| 2019-08-15 15:25:33+0000 | awarded | Uhh |
| 2019-08-16 16:39:22+0000 | Lo█ | God speed you mad son of a bitch |

Additional images were recovered from defendant's phone, which were not introduced at trial, but which the government believes are pertinent for purposes of sentencing under Title 18 United States Code Section 3553. More specifically, these images reference Justin Olsen (a/k/a "armyofchrist"), who defendant referenced in Threat Post 3, detailed above. Olsen is a real person, who was arrested by the FBI in early August of 2019 in connection with threats he made on iFunny. As detailed below and in the Supplement to the Government's Version of the Offense, defendant had saved to his phone a variety of screen captures related to Olsen.

**Ohio man posted about mass shootings, attacking Planned Parenthood and federal agents, authorities say**

Updated Aug 12, 7:03 PM;
Posted Aug 12, 5:18 PM



CLEVELAND, Ohio — Federal prosecutors on Monday charged a Boardman man with making threats against law enforcement, following an investigation that revealed he voiced his support online of mass shootings and lived in a house with 25 guns and 10,000 rounds of ammunition, records show.

Justin Olsen, 18, faces a charge of threatening to assault a federal law enforcement officer. Authorities arrested him on Aug. 7 on state charges and he was taken to the Mahoning County Jail. He has been in custody ever since

his moniker on iFunny, a website where
people can posts memes, photos and





**OLSEN, JUSTIN**

**Inmate ID:** 0066048
**Date of Birth:** [____] '2001
**Booking #:** 20190807013
**Booking Date:** 08/07/2019
**Arresting Agency:** BOARDMAN POLICE DEPT.
**Release Date:**
**POD Location:** C

His Inmate ID incase you guys want to send him mail

 

## II. PSR Offense Level, Criminal History, and Guidelines Calculations

### A. Offense Level Calculations in the PSR

U.S. Probation calculated defendant's offense level as follows:

#### 1. Base Offense Level

The base offense level for the offense of conviction, 18 U.S.C. § 875(c), is 12 pursuant to U.S.S.G. § 2A6.1(a)(1), because the offense of conviction involved a threatening or harassing communication. PSR ¶ 24.

#### 2. Specific Offense Characteristics

The offense level is increased by two levels, pursuant to U.S.S.G. § 2A6.1(b)(2)(a), because the offense involved more than two threats. More specifically, defendant posted several threatening statements on his publicly viewable iFunny account. The original post, which formed the basis for the conduct of conviction, indicated that defendant would go to the Women's Aid Center on August 23, 2019, and "slaughter and murder any doctor, patient, or visitor" he saw in the area (Threat Post 1). Threat Post 2 was addressed to FBI agents and emphasized that "awarded"

"was not a satirical account" and that defendant "will carry out what [he] post[s]." In Threat Post 3 defendant indicated that he "will do the same [murder] to these fucking whores who think its a 'freedom' to murder an innocent life" and taunted law enforcement to "stop me if you can." Threat Post 4 was a call back to Threat Post 1: repeating both the date defendant planned to carry out his threatened conduct— "August 23, 2019"—and the intended location of his attack—the "Women's Aid Center on Peterson." He concluded by writing, "if you know, you know…". Finally, in Threat Post 5, defendant wrote a mini manifesto before concluding, "I do not care anymore, may god forgive me for what I am going to do soon…" Based on the number of threat postings and the content of these postings, the government agrees with U.S. Probation that the offense involved more than two threats. PSR ¶ 25.

The offense level is increased by four levels, pursuant to U.S.S.G. § pursuant to USSG § 2A6.1(b)(4), because the offense of conviction resulted in a substantial disruption of the business functions of the Women's Aid Center. More specifically, the Women's Aid Center implemented numerous security measures, which resulted in the substantial expenditure of clinic funds, including the installation of a remote-controlled electric lock with a remote control for the front office door, a Nest security camera system with multiple monitors, and an ADT security system with a panic button. PSR ¶ 26; Tr at p. 648.

19

### 3. Total Offense Level

Based upon the above, defendant's total offense level is 18. PSR 34. The government agrees with the offense level as calculated in the PSR and does not have any objections.

### B. Criminal History Points and Category Calculation in the PSR

U.S. Probation calculated zero criminal history points for defendant and a criminal history category of I. PSR ¶¶ 37-41. The government agrees with and has no objections to the criminal history points calculations.

### C. Guidelines Calculation in the PSR

U.S. Probation calculated that with an offense level of 18 and a criminal history category of I, defendant's advisory Guidelines range is 27 to 33 months' imprisonment. PSR ¶ 106. The government agrees that this is the correct advisory Guidelines range and does not have any objections.

### III. The Factors Set Forth in 18 U.S.C. § 3553(a) Warrant a Sentence at the Low-End of the Advisory Guidelines Range of 27 to 33 Months' Imprisonment.

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.[2] In order to determine the sentence to impose, the court must consider the statutory factors listed

---

[2] Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

in 18 U.S.C. § 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements. 18 U.S.C. § 3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). For the reasons set forth below, a review of the factors set forth in 18 U.S.C. § 3553(a) makes clear that term of imprisonment at the low end of the advisory Guidelines range of 27 to 33 months, is warranted and appropriate.

### A. The Seriousness of the Offense, and the Need to Promote Respect for the Law and Provide Just Punishment

Defendant's crime is extremely serious and the need for just punishment is plainly evident. In August of 2019, defendant utilized his publicly viewable iFunny account named "awarded" to communicate violent threats against the Women's Aid Center of Chicago. The words he typed from his phone were not spoken in a closed room, whispered in confidence, or typed into a private chat. Instead, they were blasted out onto the internet where anyone, including children and women in need of medical care, had the ability to see.

Defendant's words in this case were chilling and caused immense concern and fear. They were specific—conveying a date and location of occurrence—and they threatened violence and death, specifically to "slaughter and murder any doctor, patient, or visitors" of the "Women's Aid Center in Chicago, on [P]eterson," for the very specific reason of "bullshit abortion laws." When law enforcement notified the clinic, they initially spoke with clinic employee Melissa Kamm, who, according to law

enforcement, appeared "visibly unsettled, uncomfortable, [and] startled," and who described herself as "frightened…apprehensive about coming back to work…uneasy" and that she "took a couple days off" from work after the incident. Tr. at 413-14, 638. Additionally, the Director of the Women's Aid Center, Larisa Rozansky, described her reaction to learning about defendant's threat as "shocked" and "scared" and that after-the-fact, she implemented proactive security measures, including the installation of an electric lock, a remoted controlled front office door, a security camera system, and a panic button. Id. 639, 647-52, Government Exhibits ("Gov. Exs.") 6-1 – 6-8, 6-10 – 6-11, 6-13. The posts were also so concerning that Alex Wilmot, a longtime iFunny user and recent high school graduate viewed them as threatening and reported them to the FBI. The posts likewise drew responses from other iFunny users and iFunny itself, which told defendant that he had violated its terms of service.

When confronted by law enforcement just before his arrest, defendant stated, roughly 40 times, that this was all a "joke." However, as defendant informed us during his testimony and cross-examination, this was no joke. Instead, defendant posted these threats because, "Everybody was talking about [fellow iFunny user Justin] Olsen, so I decided to do the same...I wanted attention from people. People would come view my posts and profile." Tr. 699-700.

Here, defendant made vivid, targeted threats of mass violence for "likes" and attention. He did not care who saw his words or who his words affected; he did not care about the Women's Aid Center and the people who worked there; he did not care who on iFunny—a publicly available website—saw his postings, whether it be

children, other adults, law enforcement, or women in need of medical care. He only cared about the next "like" or subscriber notification he received to his iFunny account.

The harm that stems from threats like defendant's is difficult to quantify but obvious in the harm to specific victims and society as a whole. For those who viewed the threats on iFunny, seeing defendant's posts could have instilled fear of being a victim of targeted violence in Chicago—the site of the threatened "murder"—or chilled the behavior of people seeking lawful medical care at places like the Women's Aid Center or other providers of women's healthcare. As defendant acknowledged and Alex Wilmot corroborated, iFunny was a site used widely by children. For that audience, or others visiting iFunny for its purported purpose of meme sharing, seeing a credible threat of violence is a jarring reminder of the bleak reality that mass acts of violence are real possibilities, unfortunately common in this country. For law enforcement, threats like defendant's demand a significant expenditure of resources to identify the person making the threat and mitigate any possible risk to the public: a risk that is unknowable until the investigation reveals the identity and location of the person making the threats. For the targeted victim, here the employees of the Women's Aid Center, it understandably put them in fear for their own safety. There is no place in our society for desperate attention seeking at the cost of instilling fear into the minds of targeted victims and casual observers.

The Court should consider each of the above factors in aggravation and impose a sentence that reflects the severity of defendant's conduct, justly punish it, and

adequately deter both defendant himself and others who may consider such abhorrent behavior. *See, e.g.*, *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) ("Sentences [also] influence behavior, so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor.").

## B. History and Characteristics of the Defendant

The government acknowledges that defendant has no criminal history and that since his release from pre-trial custody in November of 2019, defendant has had no significant violations of his conditions of release. In further mitigation, defendant has been bullied. Additionally, defendant has taken part in several extracurricular activities, including community service/volunteer projects and after school academic programs. Furthermore, defendant completed high school and two years of college, has worked several different jobs, and serves as his father's home health aide. The court should consider these factors in fashioning an appropriate sentence.

In aggravation, shortly after defendant's arrest, additional images were found of defendant's phone that included, but were not limited to, numerous posts about violence towards women, anti-government and anti-law enforcement posts, and posts that reflected other instances of defendant's online harassment of others. These images and postings indicate that defendant's selection of the victim in this case was not random, but instead born out of his attitudes toward women. Moreover, defendant's experience as a bullied child did not build empathy or compassion for others. Instead, he used his online platform to nurse his grievances toward women and dislike of law enforcement—particularly following the arrest of Justin Olsen,

a/k/a Army of Christ—and target his perceived enemies with specific and seemingly credible threats of violence. He likewise encouraged his online followers to believe that he intended to carry out this attack. Chillingly, in his online conversation with "TradCath," defendant discussed methods of entry to the clinic, emphasized that he was "for real" in his threats and provided information about the target location to "TradCath." Unlike law enforcement, defendant's online correspondents had no way to determine that he was not "for real" and instead as he testified at trial, seeking attention. Instead, defendant encouraged the perception that he was a would-be murderer with a pollical cause. These aggravating factors, on balance with the mitigation described above, require a sentence at low-end of the advisory Guidelines range.

### C. The Need to Afford Adequate Deterrence

True threats of violence are afforded no protection by the First Amendment. True threats are distinct from jokes or other statements that, when taken in context, do not convey a real possibility that violence will follow. *Counterman v. Colorado*, 600 U.S. 66, 74 (2023). "True threats subject individuals to fear of violence and to the many kinds of disruption that fear engenders." *Id.* (quotations omitted). After a trial, a jury found that defendant's conduct involved true threats. His conduct is an archetypical example of how true threats can cause the disruption and fear the Supreme Court described.

To commit his crime, defendant needed nothing more than a smart phone, an internet connection, and the intent to send a threat. Defendant was part of a

chronically online iFunny ecosystem and echo chamber, where the arrest of Justin Olsen was discussed ad nauseum. Olsen made online threats against the government and Planned Parenthood.[3] Defendant's conduct was driven, at least in part, in apparent response to his disagreement with Olsen's arrest, and indeed, the content of defendant's posts and Olsen's posts are similar in their targets. But defendant's conduct crossed the line from jest or hyperbole and into unprotected threats. That line matters. The defendant's sentence should reflect the need to deter others from similar conduct.

## IV.    Supervised Release Conditions

The government requests that the Court impose a two-year term of supervised release. The government further requests that defendant be required to comply with the conditions of supervised release set forth on pages 20-25 of the PSR.

---

[3] *See FBI arrests Ohio teen for online threats and finds 25 firearms, 10,000 rounds of ammo,* https://www.nbcnews.com/news/us-news/fbi-arrest-ohio-teen-online-threats-find-25-firearms-10-n1042036.

## V.    Conclusion

The government respectfully requests a term of imprisonment at the low-end of the advisory Guidelines range of 27 to 33 months imprisonment and a two-year term of supervised release that includes the conditions specified on pages 20-25 of the PSR. This sentence would adequately reflect both the mitigating and aggravating factors related to defendant's offense conduct and personal history and would comport with the factors set forth in § 3553(a).

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By:  *Aaron R. Bond*
_____
AARON R. BOND
MELODY WELLS
Assistant United States Attorneys
219 South Dearborn, 5th Floor
Chicago, Illinois 60604
Dated: October 28, 2024                (312) 353-5300